UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


ERIC DESHAUNTE RUSSELL,                          Case No. 2:18-cv-01827-MC

       Petitioner,                                   OPINION AND ORDER

   v.

BRAD CAIN,

       Respondent.
_____

MCSHANE, District Judge.

       Petitioner, an adult in the custody of the Oregon Department of Corrections, brings this

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for

robbery, kidnapping, and assault. Respondent maintains that this action is barred by the statute of

limitations, and, alternatively, that Petitioner's claims are procedurally defaulted. I agree that the

Petition is untimely, and it is DENIED.

<u>BACKGROUND</u>

       On July 25, 2013, Petitioner was charged by indictment with five counts of Robbery in

the First Degree, and one count each of Attempted Assault in the Second Degree, Kidnapping in

1 - OPINION AND ORDER

the First Degree, and Robbery in the Second Degree. Resp't Ex. 102. The charges arose from the

robbery of several taxi-cab drivers and other related offenses during the spring of 2013.

In December 2013, the case proceeded to trial, and each of the taxi-cab drivers testified.

With respect to the kidnapping charge, Harpreet Jhass testified that, on June 16, 2013, he

responded to Petitioner's request for a ride at approximately 11:00 p.m. Resp't Ex. 107 at 49-51.

Petitioner sat in the back seat and directed Jhass to drive for a few blocks before telling him to

stop. *Id.* at 52-54. Petitioner then pointed a knife at Jhass and demanded, "Whatever you have,

give it to me." *Id.* at 54-55. Jhass gave Petitioner his keys, cell phone, and around $60 in cash.

Petitioner asked whether Jhass had any more money, and when Jhass responded no, Petitioner

ordered him out of cab at knifepoint and locked the doors. *Id.* at 56-57, 66-67.

Petitioner pressed the knife into Jhass's back and ordered him to cross the street. Resp't

Ex. 107 at 56-59, 61-62. Jhass believed he was being taken to another location where he would

be assaulted or perhaps robbed of his cab. *Id.* at 77-78. As he and Petitioner crossed the street, a

car drove by them. Jhass pushed Petitioner and ran into the street, yelling for help. *Id*. at 59, 62-

63. After giving chase for a moment, Petitioner ran away. *Id.* at 60-61. Because Petitioner had

locked the doors, Jhass could not access the radio in his cab and he ran to a nearby store and

called police. *Id.* at 61. Officer Friderich, a responding officer, testified that the street where

Jhass was found was not "well-lit" and "dark, it goes down to a dead-end, [and] there's no

lights." Resp't Ex. 108 at 47, 51-52.

Petitioner took the stand in his defense and corroborated much of Jhass's testimony,

admitting that he forced Jhass out of the cab, demanded Jhass's keys, phone, and cash, locked the

cab so Jhass could not access the radio to call the police, and "walked [Jhass] across the street."

Resp't Ex. 109 at 166-69, 178.

At the close of the State's case-in-chief, Petitioner's counsel moved for judgment of acquittal on the charge of Kidnapping in the First Degree. Resp't Ex. 109 at 97-98. Counsel argued that the evidence was insufficient to prove that Petitioner intended to terrorize Jhass, a necessary element of the offense. The trial court ultimately granted the motion and the parties agreed that the lesser-included offense of Kidnapping in the Second Degree would be submitted to the jury. Resp't Ex. 109 at 188; Resp't Ex. 101 at 11.

The jury found Petitioner guilty of four counts of Robbery in the First Degree and one count each of Robbery in the Second Degree, Kidnapping in the Second Degree, and Attempted Assault in the Second Degree. Resp't Ex. 101 at 10-11; Resp't Ex. 110 at 83. The trial court imposed a total of 200 months' imprisonment. Resp't Ex. 101; Resp't Ex. 111 at 22-27.

Petitioner directly appealed his conviction and claimed that the trial court committed plain error by failing to issue a judgment of acquittal on the charge of Kidnapping in the Second Degree.[1] Petitioner argued that the State did not satisfy the asportation element of kidnapping under Oregon law, because Petitioner did not move Jhass to a "qualitatively different" place when he forced Jhass to get out of the car and walk across a dark, dead-end street. Resp't Ex. 112 at 7; *see* Or. Rev. Stat. § 163.225(1)(a) (providing that Kidnapping in the Second Degree is committed if the perpetrator takes a person "from one place to another" without consent and "with intent to interfere substantially with another's personal liberty"). The Oregon Court of Appeals affirmed without opinion, and on July 14, 2016, the Oregon Supreme Court denied review. Resp't Exs. 116-17.

---

[1] Petitioner also filed a pro se brief raising two claims of error arising from his arraignment. Resp't Ex. 113.

3 - OPINION AND ORDER

On September 16, 2016, Petitioner signed a state petition for post-conviction relief (PCR). Resp't Ex. 118. Petitioner alleged that that the attorney representing him at arraignment rendered ineffective assistance by waiving the reading of Petitioner's rights when Petitioner was not present. Petitioner further alleged that he was denied his right to a jury finding on an aggravating factor used by the sentencing judge to impose an upward departure sentence for Attempted Assault in the Second Degree.

Petitioner was appointed PCR counsel who submitted an affidavit averring that he had carefully reviewed Petitioner's claims and the trial record, yet could not certify a PCR claim consistent with his obligations. Resp't Ex. 119. Petitioner then filed a motion pursuant to *Church v. Gladden*, 244 Or. 308 (1966), requesting that the PCR court issue an order requiring PCR counsel to certify claims of ineffective assistance of counsel arising from the failure to ensure Petitioner's presence at arraignment and the failure to object to the imposition of an upward departure sentence based on facts that were not found by a jury. Resp't Ex. 120; *see Church*, 244 Or. at 311-12 (requiring a PCR petitioner to "inform the court" if PCR counsel fails to follow a "legitimate request" and allowing a petitioner to request counsel's replacement or to obtain an order "by the court to carry out petitioner's request"). In response to Petitioner's *Church* motion, Respondent moved to dismiss the PCR petition for failure to state a claim. Resp't Ex. 122.

After conducting a hearing on the motions, the PCR court denied petitioner's *Church* motion and granted Respondent's motion to dismiss for failure to state a claim. Resp't Ex. 123-24. On June 15, 2017, the PCR court entered final judgment. Resp't Ex. 125.

Under Oregon law, a PCR petition dismissed for failure to state a claim is considered "meritless," and "a judgment dismissing a meritless petition is not appealable." *See* Or. Rev. Stat. § 138.525(2),(3); *see also Young v. Hill*, 347 Or. 165, 173 (2009) (confirming that

4 - OPINION AND ORDER

"petitions that fail to state a claim are meritless, and a judgment dismissing a petition as meritless is not appealable"). Nonetheless, Petitioner appealed the dismissal of his PCR petition and filed a Motion to Determine Jurisdiction with the Oregon Court of Appeals. Resp't Exs. 126-27. While Petitioner recognized that "ORS 138.525(3) deprives this court of jurisdiction over a petition[] that is dismissed as meritless," he nevertheless argued that the Oregon Court of Appeals could exercise jurisdiction over his PCR appeal because he "was not represented by 'suitable' counsel at the time the court dismissed his petition." Resp't Ex. 127 at 1-2.

On June 29, 2018, the Appellate Commissioner for the Oregon Court of Appeals determined that the PCR judgment was "non-appealable" and the court did "not have jurisdiction of the appeal" under Or. Rev. Stat. § 138.525(3). Resp't Ex. 128.

Petitioner sought reconsideration, and the Chief Judge of the Oregon Court of Appeals denied reconsideration. Resp't Exs. 129-30. The Oregon Supreme Court denied review and appellate judgment entered on January 2, 2019. Resp't Ex. 132-33.

In the meantime, on October 15, 2018, Petitioner initiated this federal habeas action.

<u>DISCUSSION</u>

Petitioner asserts three grounds for relief. *See* Sec. Am. Pet. at 5-6 (ECF No. 43). In Ground One, Petitioner claims that the trial court violated his rights under the Sixth and Fourteenth Amendments by allowing Petitioner's arraignment to proceed in his absence and by allowing counsel to waive Petitioner's rights without his consent. In Ground Two, Petitioner contends that the trial court violated his right to jury trial by imposing consecutive sentences based on facts not found by a jury. In Ground Three, Petitioner alleges that the trial court violated his rights to due process by denying several motions for acquittal, and trial counsel rendered ineffective assistance by failing to move for acquittal on the charge of Kidnapping in

the Second Degree.[2] Respondent argues that Petitioner did not seek federal habeas relief within the one-year statute of limitations, and this action must be dismissed.

A petitioner must file a federal habeas petition challenging a state court conviction within one year after the challenged conviction becomes final. 28 U.S.C. § 2244(d)(l)(A). A conviction become final and the one-year statute of limitations begins to run upon completion of direct appellate review. If a petitioner pursues post-conviction proceedings in state court, the federal limitations period is tolled during the time in which a "properly filed" post-conviction application "is pending." *Id.* § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").

Petitioner's convictions became final on October 12, 2016, ninety days after the Oregon Supreme Court denied review of Petitioner's direct appeal on July 14, 2016. *See Bowen v. Roe*, 188 F.3d 1157, 1158-59 (1999) (holding that "the period of 'direct review'… includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court"); U.S. Sup. Ct. R. 13 (requiring a petition for certiorari to be filed "within 90 days after entry of the order denying discretionary review"). Petitioner initiated his PCR action on September 16, 2016, which tolled the statute of limitations once his convictions became final.

The PCR court entered final judgment on June 15, 2017, and Respondent argues that the one-year statute of limitations began to run on that date. Respondent contends that because Petitioner's PCR petition was meritless and not appealable under Oregon law, Petitioner's PCR

---

[2] Petitioner also alleged a fourth ground for relief, claiming that the jury's non-unanimous verdict violated his Sixth Amendment rights pursuant to *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020). This claim is no longer viable, as the Supreme Court held that the decision in *Ramos* is not retroactive on collateral review. *Edwards v. Vannoy*, 141 S. Ct. 1547 (2021).

appeal was not "properly filed" and did not toll the limitations period beyond June 15, 2017. *See* 28 U.S.C. § 2244(d)(2). More than 365 days elapsed before Petitioner sought federal habeas review on October 15, 2018, and Respondent contends that this action is barred by the statute of limitations. Petitioner counters that his PCR appeal and Motion to Determine Jurisdiction were properly filed in the Oregon Court of Appeals, and that the statute of limitations remained tolled until October 10, 2018, when the PCR Appellate Judgment became effective.

Decisions of the Ninth Circuit support Respondent's position. In *Ramirez v. Yates*, 571 F.3d 993 (9th Cir. 2009), the petitioner filed a petition for writ of coram nobis in California state court and unsuccessfully sought post-conviction relief. The petitioner appealed the denial of the coram nobis petition, and the denial was deemed not appealable "because the underlying petition failed to state a prima facie case for relief." *Id.* at 999. The Ninth Circuit found, "Because the denial of the writ was determined to be not appealable in this case, Ramirez's appeal was not properly filed and the pendency of the appeal did not toll the limitations period." *Id.*

The Ninth Circuit applied the reasoning of *Ramirez* in a case involving the issue presented here, i.e., whether an appeal of a PCR petition dismissed for failure to state a claim is "properly filed" and tolls the statute of limitations. *See Almanza-Garcia v. Amsberry*, 838 Fed. App'x 301, 302 (9th Cir. Mar. 3, 2021), *cert. denied sub nom. Almanza-Garcia v. Coursey*, 142 S. Ct. 306 (2021). Like the Petitioner in this case, Almanza-Garcia appealed the dismissal of his PCR petition for failure to state a claim and argued that the federal habeas statute of limitations remained tolled until appellate judgment entered. *Id.* The Ninth Circuit disagreed and found that, because the dismissal of a PCR petition for failure to state a claim is non-appealable under Oregon law, any appeal of the petition's dismissal is not "properly filed" under § 2244(d)(2) and does not toll the statute of limitations. *Id.* The Ninth Circuit explained:

> This court has held that a petitioner is not entitled to tolling during the pendency
> of an appeal from a non-appealable order because such an appeal is not a
> "properly filed" application for post-conviction relief. *Ramirez v. Yates*, 571 F.3d
> 993, 999 (9th Cir. 2009). Here, the order Almanza attempted to appeal was non-
> appealable because under Oregon law, "a judgment dismissing a meritless petition
> is not appealable," and a meritless petition is defined as one that "fails to state a
> claim upon which post-conviction relief may be granted."

*Id.* (quoting Or. Rev. Stat. § 138.525(2),(3)).

Petitioner argues that this Court should not follow *Almanza-Garcia* for several reasons.

First, Petitioner argues that its reasoning is inconsistent with Supreme Court authority

interpreting "properly filed" to mean compliance with state procedural rules, and Petitioner

complied with Oregon's filing requirements when he moved to determine jurisdiction in the

Oregon Court of Appeals. Pet'r Suppl. Brief at 7-9 (ECF No. 57) (citing *Pace v. DiGuglielmo*,

544 U.S. 408 (2005) and *Artuz v. Bennett*, 531 U.S. 4 (2000)). Petitioner emphasizes that the

Appellate Commissioner granted his request to determine the jurisdiction of the Oregon Court of

Appeals over his appeal, and a "court always has the authority to determine its own jurisdiction."

Pet'r Suppl. Brief at 9. Petitioner's arguments are unavailing.

Granted, in *Artuz* the Supreme Court stated that an application for post-conviction relief

is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in

compliance with the applicable law and rules governing filings." 531 U.S. at 8. The Court also

emphasized that if an application is "erroneously accepted by the clerk of a court lacking

jurisdiction…it will be *pending*, but not *properly filed*." *Id.* at 9 (emphasis in original). Thus, the

fact that Petitioner may have complied with Oregon filing requirements does not negate the

jurisdictional defect of his PCR appeal when he sought to appeal a non-appealable judgment.

Further, as observed by the Supreme Court in *Pace*, "jurisdictional matters…, which

often necessitate judicial scrutiny," are "conditions" to proper filing. 544 U.S. at 414. After

considering Petitioner's motion, the Appellate Commissioner ultimately determined that Petitioner's appeal was "non-appealable" and dismissed the appeal for lack of jurisdiction. Resp't Ex. 128. Contrary to Petitioner's argument, consideration of Petitioner's motion did not confer jurisdiction on the Oregon Court of Appeals to consider his appeal or render the appeal "properly filed" so as to toll the statute of limitations.

Second, Petitioner argues that *Ramirez*, the case relied on in *Almanza-Garcia*, is distinguishable because it involved "specific rules of California procedure applicable to the "extraordinary request for a writ of error coram nobis" rather than Oregon PCR requirements. Pet'r Suppl. Brief at 10. Petitioner maintains that the Ninth Circuit "blindly applied" *Ramirez* and the holding in that case should not dictate whether Petitioner "properly filed" a PCR appeal under Oregon law. While *Ramirez* involved a different form of post-conviction relief, the underlying issue is the same: whether an appeal of a non-appealable post-conviction judgment is "properly filed" to toll the limitations period under § 2244(d)(2). *Ramirez* unequivocally held that it is not, and *Ramirez* is binding authority on this Court. *Almanza-Garcia*, though not binding, applied the reasoning of *Ramirez* and is, at minimum, persuasive authority.

Under *Ramirez* and *Almanza-Garcia*, Petitioner's appeal of the dismissal of his PCR petition was not "properly filed" because the petition was dismissed for failure to state a claim and the judgment of dismissal was not appealable. Accordingly, the appeal did not toll the statute of limitations and the limitations period began to run on June 15, 2017. More than one year elapsed before Petitioner signed his federal Petition, and this action is time-barred.[3]

---

[3] Petitioner requests that this Court certify to the Oregon Supreme Court the question of whether his PCR "appeal to determine jurisdiction" was "properly filed" under Oregon law. Pet'r Suppl. Brief at 12. I decline to do so when this question has been answered by this Court and the Ninth Circuit.

Petitioner next asks the Court to equitably toll the statute of limitations on grounds that PCR counsel's refusal to certify claims showed a "conflict of interest" and constituted ineffective assistance, and the dismissal of his PCR petition for failure to state a claim made it impossible for Petitioner to obtain appellate review of his claims. Pet'r Brief at 16-17 (ECF No 32). Petitioner maintains that his appeal and Motion to Determine Jurisdiction were good faith efforts to clarify whether the PCR judgment was the final resolution of his case, and principles of equity require this Court to find his action to be timely.

Equitable tolling is available "only if extraordinary circumstances beyond" a petitioner's control made "it impossible to file a petition on time." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999); *see also Holland v. Florida*, 560 U.S. 631, 649 (2010). Petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418). Equitable tolling is "unavailable in most cases," as the "threshold" for its application is "very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (citations omitted).

Petitioner's underlying complaint is that PCR counsel "abandoned" his role as an advocate and caused the dismissal of Petitioner's PCR petition for failure to state a claim, thereby preventing Petitioner from obtaining appellate review of his claims to meet the exhaustion requirement for federal habeas review. Even if Petitioner could establish that PCR counsel mishandled his case and failed to certify cognizable PCR claims, Petitioner cannot show that counsel's performance before the PCR court was the *cause* of Petitioner's untimely federal filing. *See Bryant v. Ariz. Att'y Gen.,* 499 F.3d 1056, 1060-61 (9th Cir. 2007) (explaining that the asserted "extraordinary circumstance" must be the "cause" of an untimely filing to justify

10 - OPINION AND ORDER

equitable tolling). The limitations period was indisputably tolled while Petitioner's PCR petition was pending before the PCR court, and after his PCR petition was dismissed, Petitioner had one year to file a federal habeas petition. The limitations period expired while Petitioner was pursuing an appeal that was barred by Oregon statute, and Petitioner does not contend that PCR counsel repeatedly misled him about the deadline for seeking federal habeas relief or engaged in similar conduct that directly caused the untimeliness of his federal filing. *See Holland*, 560 U.S. at 652; *Benjamin v. Kelly,* 2022 WL 1285040, at *2 (9th Cir. Apr. 29, 2022) ("Where a lawyer repeatedly and specifically misleads a client about his rights and obligations, that conduct can satisfy the *Holland* standard."), Thus, Petitioner fails to show that PCR counsel's performance was an extraordinary circumstance that prevented him from filing a timely federal habeas action.

Finally, Petitioner asserts actual innocence to excuse his untimely filing. A petitioner who fails to comply with the one-year statute of limitations may overcome the default through a showing of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995); *see also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). A "credible claim of actual innocence constitutes an equitable exception to [the] limitations period, and a petitioner who makes such a showing may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits." *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011). To raise a credible claim, a petitioner must present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial" to show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 324, 327.

Petitioner presents no new evidence to support his claim of actual innocence. Rather, he argues that the evidence was insufficient to support the jury's verdict, because forcing Jhass to

11 - OPINION AND ORDER

exit the cab and walk across the street did not meet the asportation element of Kidnapping in the Second Degree requiring movement of the victim "to a qualitatively different" place. *State v. Ibabao*, 270 Or. App. 508, 509-10 (2015). However, a claim of actual innocence must be based on factual innocence rather than "legal insufficiency" of the evidence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Moreover, a rational juror could have found that Petitioner moved Jhass to a "qualitatively different place" when he forced Jhass from the cab at knifepoint, locked the doors, and ordered Jhass to cross a dark, isolated street without his keys, cash, or cell phone, particularly when Petitioner did so to prevent Jhass from calling for help. Resp't Ex. 109 at 178; *see State v. Washington*, 266 Or. App. 133, 138 (2014) (stating that an "important factor" in determining whether the victim was moved to a "qualitatively different place" is "whether the movement served to limit the victim's freedom of movement and increase the victim's isolation").

Accordingly, Petitioner cannot pass through the gateway of actual innocence, and his Petition is time-barred.

<u>CONCLUSION</u>

For the reasons explained above, the Second Amended Petition (ECF No. 43) is DENIED as untimely. A Certificate of Appealability is DENIED on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 21st day of March, 2023.

s/ Michael J. McShane
MICHAEL J. MCSHANE
United States District Judge